STATE of Wisconsin, Plaintiff-Respondent,

v.

Juan A. CASAREZ, Defendant-Appellant.†

Court of Appeals

*No. 2008AP80–CR. Submitted on briefs August 18, 2008.
—Decided October 15, 2008.*

2008 WI App 166

(Also reported in 762 N.W.2d 385.)

† Petition to review denied 3/18/09.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Adam C. Essling* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Gregory M. Weber*, assistant attorney general.

Before Curley, P.J., Fine, J., and Daniel L. LaRocque, Reserve Judge.

¶ 1. LAROCQUE, J. Juan A. Casarez appeals from a judgment entered after a jury found him guilty of possession with intent to deliver a controlled substance, cocaine (fifteen to forty grams), as party to a crime, second or subsequent offense, contrary to Wis. Stat. §§ 961.16(2)(b)1., 961.41(1m)(cm)3., 939.05, and 961.48 (2005–06).[1] He claims that the trial court erred in denying his motion seeking to suppress the 32.44 grams of cocaine, which was found in his home. He asserts that the affidavit in support of the search warrant lacked probable cause, rendering the search illegal. Because the affidavit contained sufficient facts to support probable cause that ancillary materials relating to guns would be discovered at the home, the search was not illegal, the trial court did not err in denying the motion to suppress, and we affirm.

## BACKGROUND

¶ 2. On February 11, 2007, at approximately 1:50 a.m. there was a shooting at a tavern located at 1101 North Astor Street. During the investigation, Milwaukee Police Detectives Dolores Applegate and Joseph McLin learned from Fernando Hernandez that as he was walking near the bar, he was struck in the face with a beer bottle. Hernandez stated he then punched the person who struck him in the jaw. Hernandez described the perpetrator as a shorter Hispanic male. The perpetrator then shot at Hernandez twice. A bullet was recovered from Hernandez's shoe and other bullet fragments were recovered from the tavern.

¶ 3. Witness interviews revealed that after the shooting, a white Escalade with license plate

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

#848–FZK, was seen leaving the scene. At approximately 2:02 a.m., the police stopped this vehicle and found three people inside. Casarez was in the driver's seat; his wife, Veronica Sosa (also referred to as Veronica Casarez) was in the front passenger seat; and Michael Cornelius was in the back passenger-side seat.

¶ 4.    The police discovered a .45–caliber Smith & Wesson semi-automatic handgun under the front passenger seat. Sosa gave a statement to police that at the time they were stopped by the squad car, Cornelius stated that he had "heat" (a street term for a weapon). Cornelius passed the gun to Casarez, who then gave it to Sosa, who then placed the gun under her seat. At that time the gun was recovered and Casarez was arrested.

¶ 5.    On February 12, 2007, a request was made based on an affidavit from Detective Gerald Stanaszak for a search warrant for Casarez's home, located at 2731 South 49th Street. The affidavit set forth the facts pertinent to the tavern shooting and sought permission to search the home for:

> [a]mmunition, cartridges, holsters, additional magazines, cleaning supplies, photographs, videotapes, utility bills, canceled mail envelopes, bank statements or other documentation establishing the identity of the individuals in control of the above residence; any firearms, all of the above evidence related to the following offenses:   First Degree Recklessly Endangering Safety while Armed (PTAC) and Felon in Possession of a Firearm (PTAC).

¶ 6.    The Court Commissioner found probable cause existed to issue the search warrant and a search of Casarez's home was conducted on February 13, 2007. Milwaukee Police Detective Eugene Nagler began a search of the closet in Casarez's bedroom. He immediately detected a strong odor of cocaine. When he patted

down a jacket in the closet, he located a bag containing 32.44 grams of, what was later confirmed to be, cocaine in the jacket pocket.

¶ 7.   On February 18, 2007, Casarez was charged with possession with intent to deliver a controlled substance, cocaine (more than fifteen grams but not more than forty grams), as party to a crime, second or subsequent offense.[2] Casarez pled not guilty and filed a motion seeking to suppress the cocaine on the basis that the affidavit filed in support of the search warrant failed to establish probable cause. He concedes that the affidavit establishes probable cause that he committed a crime. However, he contends that the affidavit failed to establish probable cause to believe that evidence of the crimes involved would be found at his residence. He argues that there is no connection between the alleged crime and his residence. The trial court rejected his contentions, ruling:

> Whenever you have ... three people in a car, three persons in a car and you have this whole thing where now there's competing evidence as to "a" Michael Cornelius having this gun and not this man, where you've got now a citizen witness that shows this guy, or at least the allegation is that this guy was the shooter and now you also have a statement from his wife that at best he was ... part of the transitory act of ... passing the gun as opposed [to being the shooter] ... that's an issue.
>
> Whose gun is this ... so for [the police] to get information as to identifiers which connect this gun up

[2] Certified judgment rolls established that Casarez was a convicted felon as he had been convicted of a 1994 charge of possession with intent to deliver cocaine and possession with intent to deliver marijuana.

specifically with one person is certainly appropriate investigatory work.

... I]n [the] case where he ... is ... only [one] fellow in the car and he has complete control of the car and there's nobody else there, I may even agree [there is no connection to search the home] ... but in this case here there was complete testimony even from statements of the witnesses involved, so I believe that certainly the warrant has ... a validity of appropriateness and I think that under the totality of the circumstances and ... there were still differences in the statements which I think the police had a right to go and determine by obtaining various identifiers ... that would connect this particular person with this particular activity that was in question.

. . . .

... [T]herefore I'm going to find that the warrant in this case under the totality of the circumstances test had validity from the get-go. ... On its face they had a reason for being there legitimately and they went with that.

¶ 8. After the denial of the suppression motion, the case was tried to a jury in July 2007. The jury found Casarez guilty, and he was sentenced to ten years in prison, consisting of five years of initial confinement followed by five years of extended supervision. Judgment was entered. He now appeals.

## DISCUSSION

¶ 9. Casarez claims the trial court erred in denying his motion to suppress. He argues that the affidavit submitted to the court commissioner failed to establish probable cause and the search warrant should not have

been issued.[3] Motions to suppress present this court with a mixed question of fact and law. *State v. Eason*, 2001 WI 98, ¶ 9, 245 Wis. 2d 206, 629 N.W.2d 625. To the extent the trial court's decision involves findings of evidentiary or historical facts, those findings will not be overturned unless they are clearly erroneous. *State v. Krier*, 165 Wis. 2d 673, 676, 478 N.W.2d 63 (Ct. App. 1991). The application of constitutional and statutory principles to the facts found by the trial court, however, presents a matter for independent appellate review. *Id.*

¶ 10.   In reviewing whether a warrant was properly issued, we give deference to the court commissioner and "must consider whether he or she was apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched." *State v. Sloan*, 2007 WI App 146, ¶ 8, 303 Wis. 2d 438, 736 N.W.2d 189 (quotation marks omitted). We will uphold the decision to issue the warrant unless the facts in the supporting

---

[3] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 11 of the Wisconsin Constitution provides:

> **Searches and seizures.** SECTION 11. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

affidavit "were clearly insufficient to support a finding of probable cause." *Id.* (quotation marks omitted). In reviewing a probable cause assessment, we examine the totality of the circumstances. *State v. Ward*, 2000 WI 3, ¶ 26, 231 Wis. 2d 723, 604 N.W.2d 517.

■

¶ 11.   Here, the court commissioner determined the affidavit contained sufficient facts to support a finding of probable cause to believe that the police would locate ancillary materials relating to the gun used in the tavern shooting and information as to the ownership of the gun. We agree with the trial court's assessment.

¶ 12.   Although Casarez concedes the affidavit establishes probable cause that he committed a crime, he asserts that it contains no evidence to establish that a crime was committed at his home, that the gun was ever observed at his home, or that he was ever seen with the gun at his home. He also points out that the police stopped his vehicle ten minutes after the shooting; and, thus, there would have been no time for him to go to his home.

¶ 13.   The dispositive issue, therefore, is whether the affidavit sufficiently averred that the objects sought were reasonably thought to be linked to the commission of a crime. Here, the objects sought included:   "the location of ammunition, gun cleaning products, receipts related to the purchase and possession of firearms, ammunition, gun case, and other evidence relating to establishing dominion and control in the possession of firearm(s) by" Casarez. The crimes being investigated were first-degree recklessly endangering safety while armed and felon in possession of a firearm.

¶ 14.   We conclude that the objects sought related directly to both crimes as both involved a firearm.

Although, the police could have stopped the investigation at the point of recovery of the weapon and arrest of Casarez, they were not required to cease their investigation. As pointed out by the State "nothing in the law limits the quantum of evidence related to a crime that may be gathered or bars the gathering of evidence related to the crime." In fact, it is in the best interests of public welfare for police to conduct complete and thorough investigations to make sure that they recover all potential evidence so that criminals can be convicted and the integrity of the justice system can be preserved.

¶ 15.   Under the circumstances here, it was reasonable for the police to continue the investigation. Although the police had recovered the gun and apprehended potential suspects of the shooting, the fact that there were three individuals in the car when the gun was recovered presented potential issues with proof of who committed the crime. The witnesses had described Casarez as the shooter, but the gun was found under the seat of Sosa. Sosa told police that Cornelius was the one who had the gun and passed it forward when the police stopped their car. Given the standard of proof, requiring the State to prove its case beyond a reasonable doubt, it was not unreasonable for the police to seek further evidence to prove the crimes being investigated.

¶ 16.   Casarez asserts that affirming in the case would create a dangerous precedent allowing the search of an individual's home whenever contraband is located in a vehicle. He argues that if we uphold the search, a "bright line" rule will be created allowing the police to search a residence any time they locate contraband on a person, or in the car the person is driving. We disagree. Each case is evaluated on the facts and circumstances specific to that case. Here, the gun was recovered from

670

a vehicle with three people it in. Sosa, the person closest to the gun when it was discovered claimed it was Cornelius's, and had been passed forward. Witnesses from the scene described Casarez as the shooter. Under the totality of these circumstances, it was reasonable to continue the investigation. If Casarez had been arrested as a felon in possession of a firearm as he was walking along the street, or if he had committed a traffic violation and was pulled over while driving alone in his car, such facts standing alone would be insufficient to support the search of his residence. A residential search warrant under those facts would present the reasonableness of a search for evidence of ownership, dominion and control of the weapon in a substantially different light. The holding in this case does not create a bright line rule, which will justify a home search *every* time contraband is found in a car, or on a person, and should not be interpreted as such.

¶ 17.   We are further not persuaded by Casarez's reliance on *Sloan*. In *Sloan*, we held that under the totality of the circumstances, there was no "probable cause to believe a nexus existed between the items sought and the residence searched." *Id.*, 303 Wis. 2d 438, ¶ 1. In that case, Sloan attempted to ship a package containing marijuana to Florida. *Id.*, ¶ 2. He listed a return address of 1005 South 114th Street on the package. *Id.* The shipping employee was suspicious and, with the assistance of her supervisor and security discovered what was believed to be marijuana. *Id.*, ¶ 3. Police were called and further investigation ensued. *Id.*, ¶¶ 4–5. As a part of that investigation, a search warrant was issued to search the return address listed on the package, wherein the police discovered a large number of marijuana plants. *Id.*, ¶ 6. Sloan moved to suppress the admission of evidence. *Id.* The *Sloan* trial

court ruled that there was no nexus between the items sought and the residence searched, but that the good faith exception applied, and, in deference to the judge who issued the warrant, affirmed the issuance of the warrant on that basis. *Id.*, ¶ 26. "The good faith exception to which the trial court refer[red] is a doctrine that applies to police officers who execute a search warrant in the mistaken belief that it is valid." *Id.*, ¶ 27 (citing *United States v. Leon*, 468 U.S. 897, 918–20 (1984)).

¶ 18.  There are several factors that distinguish this case from *Sloan*. First, Casarez's connection to the residence to be searched did not come from a return address on a package as in *Sloan*; rather, it came from Casarez himself (and his wife). Second, unlike Sloan, who reported he was leaving the state for Florida the next day, making it "unlikely that contraband would be found at the residence," *id.*, ¶ 32, there is no suggestion here that Casarez was going anywhere (except to jail). Third, the search warrant in *Sloan* sought evidence of items to show who was in control of the premises, relating to the crime of maintaining a drug house, but the affidavit in support did not present evidence to show the premises was. *Id.*, ¶ 35. Whereas in the instant case, the search warrant was considerably narrower:  "The objects of the search . . . may constitute evidence of crimes, to wit: 1st degree reckless endangering safety while armed and felon in possession of a firearm." Fourth, unlike the failure in the *Sloan* affidavit to justify a search for evidence of a drug house, the affidavit here shows substantial probable cause tending to show that Casarez was involved in those particular crimes named, hours before his arrest. Finally, *Sloan* is distinguishable from the instant case because it addressed the good faith exception. We do not reach the good faith doctrine in the instant case because

672

we have concluded that the affidavit in support of the search warrant supports a finding of probable cause. In the instant case, unlike in *Sloan*, the affidavit contained a reasonable inference to connect the items sought with the residence searched. Based on all of these factors, we conclude that *Sloan* does not control.

■

¶ 19.  Moreover, this case adheres to the Wisconsin Supreme Court's longstanding precedential standards on probable cause set forth in *Ward*:

> Where there is evidence that would lead a reasonable person to conclude "that the evidence sought is likely to be in a particular location," there is probable cause for a search of that location, even if it may also be reasonable to conclude that the evidence may be in a second or third location as well.

*Id.*, 231 Wis. 2d 723, ¶ 34 (citation omitted). In *Ward*, the supreme court held that where a reasonable inference can be drawn linking the evidence to the home searched, we will affirm the probable cause determination. *Id.*, ¶¶ 30–31. The inference need not be the *only* inference which can be drawn, but it must be a *reasonable* inference. *Id.* The supreme court rejected Ward's argument that the affidavit in support of the search warrant failed to establish with more specificity a connection between the items sought and the residence searched:  "[T]his level of formalism is not in keeping with the totality of the circumstances test." *Id.*, ¶ 33.

¶ 20.  Based on the totality of the circumstances here, one reasonable inference was that the ancillary materials sought in the search warrant would be found at Casarez's home. It is reasonable to infer that if Casarez was the shooter and the gun belonged to him, he would have at his residence additional ammunition

and other gun-related materials. *See United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995) (it is reasonable to infer that a person who has been arrested for a crime involving a gun will keep in his or her home the "fruits and instrumentalities" of the crime). Accordingly, we conclude that the trial court did not err in denying the motion to suppress. The affidavit was sufficient to support the finding of probable cause as it contained facts leading to a reasonable inference that the objects sought were linked to the commission of the crimes being investigated.

*By the Court.*—Judgment affirmed.

¶ 21. FINE, J. (*concurring*). I fully join in the Majority opinion, with the exception of ¶ 16, which discusses matters that need not be analyzed in this case.

¶ 22. The key as I see it is that the gun found in Juan A. Casarez's car might have been his irrespective of what Michael Cornelius and Casarez's wife told the police. Certainly, the items for which the police sought the warrant are, as the Majority correctly observes, things that someone owning a gun would naturally have in his or her home. Thus, I disagree with the Dissent's comment that "nothing . . . connects Casarez's house with the recovered gun." Dissent, ¶ 27. As the Majority recognizes, the stuff for which the police sought the warrant had the potential to nail down whether the gun was Casarez's; the police were not bound by the passengers' attempt to shift the blame from Casarez.

¶ 23. CURLEY, P.J. (*dissenting*). I respectfully dissent.

¶ 24. The issuance of a search warrant permitting the invasion of one's home is governed by several rules of law.

¶ 25. Whether there is probable cause that evidence is located at a particular place is determined by examining the " 'totality of the circumstances.' " *State v. DeSmidt*, 155 Wis. 2d 119, 131, 454 N.W.2d 780 (1990) (citation omitted). Therefore, we consider "whether objectively viewed, the record before the warrant-issuing judge provided 'sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, *and* that they will be found in the place to be searched.' " *State v. Ward*, 2000 WI 3, ¶ 27, 231 Wis. 2d 723, 604 N.W.2d 517 (emphasis added; citation and one set of internal quotation marks omitted).

¶ 26. " '[P]robable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime.' " *State v. Higginbotham*, 162 Wis. 2d 978, 995, 471 N.W.2d 24 (1991) (quoting *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)).

¶ 27. The affidavit in support of the search warrant for Casarez's home, when distilled to its essence, provides only the following information. Casarez was involved in a bar fight, where he struck the victim in the face with a beer bottle and shot at the victim's legs. Witnesses provided the police with a license plate number and the make of the vehicle that left the scene. Shortly thereafter, the police spotted the car and discovered that Casarez was the driver, the front-seat passenger was Casarez's wife, and the back seat passenger was a man by the name of Michael Cornelius. A gun was found under Casarez's wife's seat. She told police that when the police stopped the car, Cornelius said he

was carrying a gun which he gave to Casarez, who handed it to his wife, who put it under the seat. If Casarez's wife's statement is to be believed, it was the back-seat passenger who possessed the gun, not Casarez. At best, Casarez may have used this gun in the bar fight, but nothing in this scenario connects Casarez's house with the recovered gun.

¶ 28. The trial court never explained exactly how these facts gave rise to an "honest belief in a reasonable mind" that evidence of other guns and ammunition would be found in Casarez's home, except to say that:

> [S]o for [the police] to get information as to identifiers which connect this gun up specifically with one person is certainly appropriate investigatory work.
>
> Now, in your [hypothetical] where he is the only fellow in the car and he has complete control of the car and there's nobody else there, I may even agree with you that [there is no connection to search the home,] that could be just, you know, pretense for doing this or that, but in this case here there was complete testimony even from statements of the witnesses involved, so I believe that certainly the warrant has –has a validity of appropriateness and I think that under the totality of the circumstances and the –the –even though the differences may not be as great as some differences, there were still differences in the statements which I think the police had a right to go and determine by obtaining various identifiers, et cetera, that are –that would connect this particular person with this particular activity that was in question just because of the difference of the information they had already.

In other words, if I am interpreting the trial court's logic correctly, it is perfectly fine to search Casarez's house to determine whether he actually owned the gun and not Cornelius, but, had Casarez been alone in the

car, such a search may not have been valid. The Majority opinion contains a similar theme. In assuring us that the holding will not create a dangerous precedent, the Majority states:

> If Casarez had been arrested as a felon in possession of a firearm as he was walking along the street, or if he had committed a traffic violation and was pulled over while driving alone in his car, such facts standing alone would be insufficient to support the search of his residence.

Majority, ¶ 16. I ask, why? Here, the trial court approved the search on the strength of the police doing "investigatory work." In future cases, the police may petition for a search warrant claiming they need additional information to better their case, or need to be assured no other guns or ammunition remain in the offender's home. Not only is the trial court's and the Majority's logic flawed, but also, despite the Majority's claim to the contrary, this ruling permits the police to apply and obtain search warrants for the homes of anyone arrested with a gun. This is a troubling development in the law and eviscerates the protections traditionally given to the sanctity of one's home.

¶ 29. For the reasons stated, I would reverse. Accordingly, I respectfully dissent.