PER CURIAM.
¶1 Eve Nance appeals from a judgment convicting her of first-degree intentional homicide and hiding a corpse as party to a crime. She contends that the circuit court should have suppressed her inculpatory statements to police. We disagree and affirm.
¶2 On November 1, 2013, Nance shot and killed her husband Tim Nance (Tim) while he was in the shower of the couple's home in Fond du Lac. After the killing, Nance and her sister Tina Ewell removed the body and transported it to Milwaukee where it was dumped in a wooded location concealed by brush and trees.
¶3 Nance reported Tim as a missing person on November 5, 2013. She advised police that Tim was supposed to meet some of his work friends on the evening of November 1, 2013, but had not shown up. Tim's car was parked in front of the couple's home with his wallet inside.
¶4 Police soon began to suspect Nance of lying to them. Their investigation revealed that Tim had recently started an affair with a coworker, with whom he had planned to join for dinner on the evening of November 1, 2013. It also revealed that Nance had previously threatened Tim for having an affair and had brandished a gun while arguing with him on multiple occasions. The last person to talk to Tim on the phone indicated that at 4:17 p.m. on November 1, 2013, Tim said he was home preparing to take a shower. A video surveillance tape from a local store that evening showed Nance and Ewell purchasing new shower curtain liners and shower hooks. Those items were consistent with the ones police observed in the bathroom of Nance's home.
¶5 On November 20, 2013, Nance submitted to a formal interview with police. Again, she denied any knowledge of Tim's whereabouts. At 2:00 p.m., police arrested Nance on charges of hiding a corpse and obstructing an officer. Over fifty hours later, at 4:15 p.m. on November 22, 2013, the circuit court found probable cause for Nance's arrest. In the interim, police arrested and detained Ewell for her involvement in Tim's disappearance. They also executed multiple search warrants. One search of Nance's home uncovered a projectile in the bathroom plumbing pipes that was later described as a bullet.
¶6 Nance filed a petition for a writ of habeas corpus on November 26, 2013, asserting an unreasonably long detention. The circuit court denied the petition, noting that delays in the case were justified by its crowded calendar and continued police investigation. It set bond and agreed to review the matter on December 4, 2013, in the event that no complaint had been filed by that date.
¶7 On November 27, 2013, Nance contacted police and told them that she wished to speak to them without her attorney. After waiving her Miranda[1] rights, Nance admitted to killing Tim. She emphasized that Ewell had nothing to do with Tim's death and that she acted essentially in self-defense. Nance then led police to Tim's body. Upon locating the body, one detective made a comment about the decision to arrest Nance, saying that he knew it would be "enough pressure to get her to F'ing crack."
¶8 Three days later, the State conducted an autopsy of Tim's body, which revealed two bullet wounds in his head, one fired at close range. Nance provided an additional inculpatory statement to police on December 1, 2013, which largely repeated her earlier inculpatory statement.
¶9 On December 3, 2013, the State filed a criminal complaint charging Nance with first-degree intentional homicide and hiding a corpse as party to a crime. Nance had her initial appearance on the charges the next day.
¶10 Several months later, Nance moved to suppress her inculpatory statements, complaining that they were both the product of an unreasonably long detention and involuntary. After a hearing, the circuit court denied the motion. Again, the court determined that delays in the case were justified. It also found that the statements were voluntary.
¶11 The matter proceeded to trial where a jury found Nance guilty of first-degree intentional homicide and hiding a corpse as party to a crime. The circuit court sentenced Nance to a term of life imprisonment with eligibility for extended supervision after twenty years on the first count and to a consecutive term of five years of initial confinement and five years of extended supervision on the second count. This appeal follows.
¶12 On appeal, Nance contends that the circuit court should have suppressed her inculpatory statements to police. A circuit court's ruling on a motion to suppress evidence presents a mixed question of fact and law. State v. Casarez , 2008 WI App 166, ¶9, 314 Wis. 2d 661, 762 N.W.2d 385. The court's findings of fact will not be overturned unless they are clearly erroneous. Id. However, the application of statutory and constitutional principles to those findings of fact presents a matter for independent appellate review. Id.
¶13 We begin with Nance's complaint that her inculpatory statements were the product of an unreasonably long detention. She cites delays in both the probable cause determination for her arrest and initial appearance.
¶14 A suspect detained pursuant to a warrantless arrest has a Fourth Amendment right to prompt judicial determination of whether probable cause exists for the arrest. Gerstein v. Pugh , 420 U.S. 103, 124-25 (1975). Absent a bona fide emergency or extraordinary circumstance, "prompt" means within forty-eight hours. County of Riverside v. McLaughlin , 500 U.S. 44, 56-57 (1991). Wisconsin has adopted the Riverside forty-eight hour rule. State v. Koch , 175 Wis. 2d 684, 696, 499 N.W.2d 152 (1993).
¶15 A suspect also has a due process right to an initial appearance within a "reasonable time" following arrest. State v. Evans , 187 Wis. 2d 66, 90, 522 N.W.2d 554 (Ct. App. 1994) (citation omitted). This right is codified by WIS. STAT. § 970.01(1) (2017-18).[2] State v. Harris , 174 Wis. 2d 367, 374, 497 N.W.2d 742 (Ct. App. 1993).
¶16 Here, the circuit court's finding of probable cause occurred over fifty hours after Nance's arrest. This was a violation of the Riverside forty-eight hour rule. However, it does not follow that Nance is entitled to the remedy of suppression. A Riverside violation does not require suppression if the challenged evidence was not a consequence of the Riverside violation. Koch , 175 Wis. 2d at 699-700. In this case, police gathered no evidence in the extra two-plus hours that would justify the suppression of Nance's inculpatory statements, which occurred days later.
¶17 As for the delay in Nance's initial appearance, we are not persuaded that it was unreasonable. A review of the timeline between Nance's date of arrest and initial appearance shows that she was afforded ample due process. This included a probable cause determination, a habeas corpus hearing, and a bond hearing, all of which examined the propriety of her detention.[3] Moreover, a postarrest detention is permissible as long as it is for a proper purpose. Evans , 187 Wis. 2d at 91. In this case, police needed time to check out Nance's stories, execute multiple search warrants, arrange for an autopsy, and review the collected evidence.
¶18 In her brief, Nance relies heavily upon what she perceives to be the case's smoking gun: the comment made by one detective about the decision to arrest her, saying that he knew it would be "enough pressure to get her to F'ing crack." This remark made after locating Tim's body does not alter our analysis. Regardless of the subjective intent of one detective, police had probable cause for Nance's arrest as found by the circuit court. Moreover, they had a proper purpose for her postarrest detention in their legitimate investigatory activities. Accordingly, we see no reason to suppress Nance's statements on the basis of her detention.
¶19 We turn next to Nance's complaint that her inculpatory statements were involuntary. She accuses police of improperly exploiting her depleted mental condition in detention via the use of her sister, Ewell. Nance cites her close relationship with Ewell, Ewell's arrest and detention, and statements made by police about Ewell in the November 20, 2013 interview.[4]
¶20 The admission of involuntary statements violates a defendant's right to due process. State v. Hoppe , 2003 WI 43, ¶36, 261 Wis. 2d 294, 661 N.W.2d 407. Statements are voluntary if they arise from a free and unconstrained will and reflect deliberateness of choice, as opposed to arising from an unequal confrontation in which the pressures on the defendant exceed the defendant's ability to resist. Id. "Coercive or improper police conduct is a necessary prerequisite for a finding of involuntariness." Id. , ¶37.
¶21 Here, we are not persuaded that police engaged in coercive or improper conduct in obtaining Nance's statements. Contrary to Nance's suggestion, Ewell was not some pawn used by police to unlawfully induce her statements. Rather, Ewell was a legitimate suspect in her own right. Police had probable cause to arrest and detain her.[5] Their statements about her in the November 20, 2013 interview with Nance are understandable, as would be any statements police would make to a suspect in a case about a suspected co-conspirator.
¶22 Finally, it is worth noting that Nance did not give an inculpatory statement in her November 20, 2013 interview. Rather, she denied any knowledge of Tim's whereabouts. It was not until seven days later that Nance, on her own initiative, contacted police and told them that she wished to speak to them without her attorney. Police properly informed Nance of her Miranda rights. The circuit court found their questioning to be polite and respectful throughout.[6] Under these circumstances, we perceive no basis to suppress Nance's subsequent statements as involuntary.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

See Miranda v. Arizona , 384 U.S. 436 (1966).

Wisconsin Stat. § 970.01(1) provides in part: "Any person who is arrested shall be taken within a reasonable time before a judge in the county in which the offense was alleged to have been committed." All references to the Wisconsin Statutes are to the 2017-18 version.

The time period between Nance's date of arrest and initial appearance also included the Thanksgiving holiday during which there was no court.

In Nance's November 20, 2013 interview, police made such statements as: (1) "The important part is I don't think we want to get a lot of people involved. I know you love [Ewell]. I know you love her kids"; (2) "I know you don't want to get anybody else involved.... Those guys are looking at [Ewell] too"; and (3) "This is a huge moment, not only for you but for [Ewell] and her kids."

Ewell was later tried and convicted of hiding a corpse as party to a crime, aiding a felon-falsify information, and obstructing an officer.

The circuit court's finding was based upon its review of the videotaped interviews.