**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 17, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP277-CR**

Cir. Ct. No. 2017CF4124

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

THEODIS S. EUELL,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: FREDERICK C. ROSA, Judge. *Affirmed*.

Before Dugan, Fitzpatrick and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Theodis S. Euell appeals the judgment convicting him of possession with intent to deliver cocaine (between five and fifteen grams). *See* WIS. STAT. § 961.41(1m)(cm)2. (2015-16).[1] He contends that the circuit court erred when it denied his motion to suppress evidence obtained from a search.  We disagree and affirm.

## I. BACKGROUND

¶2     The charge against Euell was based on cocaine located during a search of his girlfriend's apartment.  Euell subsequently moved to suppress the evidence.[2]

¶3     At the suppression hearing, Police Officer Kurt Ziarnik testified, in relevant part, that at approximately 10:30 p.m. on August 26, 2016, he and his partner were dispatched to 3903 North Port Washington Road in Milwaukee. They were responding to an anonymous 911 caller who reported seeing a black male in his early twenties, wearing a white T-shirt and black jeans, standing in the doorway of an apartment building with a semiautomatic rifle.  The police officers arrived at the scene approximately seven minutes after the call came in.  Upon arrival, Officer Ziarnik observed a man standing in the corner of a doorway who fit the caller's description.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The parties agreed to be bound by a prior circuit court ruling that Euell had standing to challenge the search.

¶4      Moments after Officer Ziarnik and his partner arrived at the scene, dispatch received another anonymous 911 call with updated information.[3]  Officer Ziarnik testified that, during the follow-up call, the caller stated, "[a] black male came out and fired six shots, also changed into a black or gray hoodie."  Officer Ziarnik testified that Euell was wearing a dark-colored hoodie when the police officers arrived at the scene.  Officer Ziarnik further testified that at the time of his exchange with Euell, Euell did not have any firearms, shell casings, or drug paraphernalia or packaging on his person.

¶5      According to Officer Ziarnik, Euell told him that he was on probation for "battery domestic abuse."   However, during cross-examination, Officer Ziarnik acknowledged that when he reviewed his body camera recording of the encounter, Euell only said "DV" (domestic violence) in response to Officer Ziarnik's question regarding whether Euell was on probation.

¶6      After additional questioning about whether he knew the exact crime that Euell was on probation for before entering the apartment, Officer Ziarnik said that he did not recall but that he knew his partner ran Euell's name through the computer system.  Officer Ziarnik continued:  "I just remember that he qualified under [2013 Wisconsin] Act 79.[4]  That's all I can remember."  Officer Ziarnik went on to testify that he knew that Euell qualified under Act 79 before entering the apartment.

---

[3]  Officer Ziarnik testified that the same phone was used to make both 911 calls.

[4]  2013 Wisconsin Act 79 created multiple statutes relating to searches by law enforcement officers of individuals on community supervision (e.g., parole, probation, extended supervision).  We will refer to the statutes collectively as "Act 79" because that is how the parties refer to them.

3

¶7      Police officers subsequently searched Euell's girlfriend's apartment where Euell was staying. The search yielded the cocaine that forms the basis for the charge against Euell.

¶8      During the suppression hearing, the circuit court took judicial notice of Euell's February 10, 2016 conviction for battery as an act of domestic abuse, *see* WIS. STAT. §§ 940.19(1), 973.055(1) (2015-16), in Milwaukee County Case no. 2015CM3266.

¶9      The circuit court denied Euell's suppression motion, concluding that the search was valid under Act 79. Euell subsequently pled guilty. The circuit court accepted Euell's plea and entered judgment accordingly. This appeal follows.

## II. DISCUSSION

¶10      A circuit court's ruling on a motion to suppress evidence presents a mixed question of fact and law. *State v. Casarez*, 2008 WI App 166, ¶9, 314 Wis. 2d 661, 762 N.W.2d 385. The court's findings of fact will not be overturned unless they are clearly erroneous. *Id.* However, the application of statutory and constitutional principles to those findings of fact presents a matter for independent appellate review. *Id.*

¶11      Euell contends that the circuit court erred when it determined that the search pursuant to Act 79 was valid. As relevant here, Act 79 is codified in WIS. STAT. § 973.09(1d), which reads as follows:

> If a person is placed on probation for a felony or for any violation of ch. 940 [crimes against life and bodily security], 948 [crimes against children], or 961 [uniform controlled substances act], the person, his or her residence, and any property under his or her control may be searched

by a law enforcement officer at any time during his or her period of supervision if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of probation. Any search conducted pursuant to this subsection shall be conducted in a reasonable manner and may not be arbitrary, capricious, or harassing. A law enforcement officer who conducts a search pursuant to this subsection shall, as soon as practicable after the search, notify the department of corrections.

¶12 Our supreme court analyzed Act 79 in a decision that was released after the briefing in this appeal was complete. *See State v. Anderson*, 2019 WI 97, 389 Wis. 2d 106, 935 N.W.2d 285. We use that decision as a basis for our own analysis.[5]

¶13 The threshold inquiry is whether police officers had knowledge of Euell's probation status so as to justify an Act 79 search. *See Anderson*, 389 Wis. 2d 106, ¶21. The second inquiry is whether under the totality of the circumstances, the police officers had reasonable suspicion that Euell was committing, was about to commit, or had committed a crime. *See id.*

¶14 Euell contends that, at the time of the search, Officer Ziarnak had insufficient knowledge of the offense for which Euell was on probation. Euell points to Officer Ziarnik's body camera recording that shows Euell stating that he was on probation for a "DV" offense, but not specifying to what crime that modifier was attached. According to Euell, a finding by the trial court that Officer

---

[5] The court in *State v. Anderson*, 2019 WI 97, ¶22, 389 Wis. 2d 106, 935 N.W.2d 285, analyzed Act 79 as it relates to a person released on extended supervision for a felony offense. We note that the analysis set forth in that decision nevertheless is applicable here because a person on probation for a felony or for a violation of Chapter 940, 948, or 961 is treated, under Act 79, in the same manner as a person released on extended supervision. *See* WIS. STAT. §§ 973.09(1d) & 302.113(7r).

5

Ziarnik knew that Euell was on probation for battery prior to entering the apartment is clearly erroneous. We disagree.

¶15 The circuit court's finding that the police had sufficient knowledge that Euell was on probation for a qualifying offense is supported by the evidence presented during the suppression hearing. Namely, it is supported by Officer Ziarnik's testimony: "I just remember that he qualified under Act 79. That's all I can remember." When asked in a follow-up question whether he knew that Euell qualified under Act 79 before going into the house, Officer Ziarnik said, "Yes." As further support for its finding, the circuit court referenced Officer Ziarnik's testimony that his partner inquired about Euell's status and determined that Euell was on probation. The circuit court also took judicial notice of the judgment of conviction against Euell in Milwaukee County Case no. 2015CM3266 for battery as an act of domestic abuse, i.e., a crime under chapter 940.

¶16 The circuit court's finding that police officers had knowledge of Euell's probation status so as to justify an Act 79 search is not clearly erroneous. Insofar as Euell suggests conflicting evidence was presented at the suppression hearing, it is the circuit court, not this court, that determines the credibility of witnesses and resolves those conflicts. *See **State v. Owens***, 148 Wis. 2d 922, 930, 436 N.W.2d 869 (1989) ("Sorting out the conflicts and determining what actually occurred is uniquely the province of the [circuit] court, not the function of the appellate court."). The circuit court did so here and found in favor of the State.

¶17 Next, we determine whether under the totality of the circumstances, the police officers had reasonable suspicion that Euell was committing, was about to commit, or had committed a crime.

¶18 "Reasonable suspicion is a fairly low standard to meet." *Anderson*, 389 Wis. 2d 106, ¶33. The *Anderson* court explained: "'[R]easonable suspicion must be based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' A determination of reasonable suspicion is made based on the totality of the circumstances." *Id.* (one set of quotation marks and citations omitted).

¶19 The totality of the circumstances consist of the following facts as found by the circuit court. First, the circuit court found that the officers arrived at the scene in response to a complaint that shots had been fired. Second, the caller described the shooter as "someone who fit [Euell's] description, at least in terms of clothing." Third, the caller said that shots were fired, the shooter went into the building and came back out with different clothing on, which made it reasonable for the officers to believe that the shooter probably resided at that location. Fourth, Euell made statements suggesting that he lived in the building. Fifth, the circuit court acknowledged that the police officers did not locate any shell casings outside, nor did they recover a gun.

¶20 During its analysis of the totality of the circumstances, the circuit court also discussed the anonymous caller:

> What the police did have for that person was a phone number. There was an initial call. And while the police were en route, there was a follow-up call to provide additional information to identify that—the person who was shooting the gun had gone into the residence and come back out in different clothing. And, to me, those are pieces of information that would lead me to believe that the information is reasonably reliable, and it's not inappropriate for the police to rely upon that information.

¶21 Euell argues that the officers did not have knowledge of the anonymous caller's identity so as to support the tip's veracity, nor did the caller

7

provide the sort of predictive information that can support reliability. Euell claims the outcome in this case is governed by *Florida v. J.L.*, 529 U.S. 266 (2000).

¶22    In *J.L.*, officers received an anonymous tip about a young black male in a plaid shirt carrying a gun at a bus stop. *Id.* at 268. A search and seizure was performed on the defendant only because he was standing at the bus stop and his physical description matched that given by the tipster. *Id.* The United States Supreme Court held that the anonymous tip was not sufficient on its own to justify the search and seizure, and apart from the tip, the officers had no reason to suspect the defendant of illegal activity. *Id.* at 271. Because of this, the officers had no right to stop and frisk the defendant. *Id.* at 274.

¶23    The facts in *J.L* are distinguishable from the facts in this case. Here, the officers had reasonable suspicion to believe Euell had just fired a rifle based on the information provided during the two separate 911 calls. This information included a specific description of the shooter's clothing, actions, and movements. Euell was wearing the clothing described and was positioned in the doorway as the caller said the shooter would be. Although the officers did not locate a gun and did not find any spent bullet casings, they could have inferred that while they were responding to the 911 call, Euell fired a gun, went upstairs to hide it, and came down in a change of clothing. This tip differs from the "bare-boned" tip in *J.L.* *See id.* at 273.

¶24    In addition, the officers were responding to a potentially lethal situation that involved shots being fired. The exigency of the situation weighed in favor of the officers' reasonable suspicion that Euell was committing, was about to commit, or had committed a crime. *See State v. Rutzinski*, 2001 WI 22, ¶26, 241 Wis. 2d 729, 623 N.W.2d 516 ("recogniz[ing] that there may be circumstances

where an informant's tip does not exhibit indicia of reliability that fit neatly within the bounds of [case law], but where the allegations in the tip suggest an imminent threat to the public safety or other exigency that warrants immediate police investigation"). Euell emphasizes that the officers did not report hearing the sound of gunshots or have any other information that shots had been detected in the area. However, even without this evidence, there was enough here to satisfy the low standard required for reasonable suspicion. *See Anderson*, 389 Wis. 2d 106, ¶33.

¶25 Based on the totality of the circumstances, the officers' suspicion that Euell had committed, was committing, or was about to commit a crime was reasonable. Consequently, the circuit court properly denied Euell's suppression motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.