COURT OF APPEALS
DECISION
DATED AND FILED

November 4, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP564**

STATE OF WISCONSIN

Cir. Ct. Nos. **2019TR2414**
**2019TR2415**
**2019TR2425**

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TERENCE S. O'HAIRE,

DEFENDANT-APPELLANT.

APPEAL from judgments of the circuit court for Juneau County: STACY A. SMITH, Judge. *Affirmed*.

¶1 GRAHAM, J.[1] Terence S. O'Haire appeals a revocation judgment for unlawfully refusing to submit to an implied consent test (the "refusal"), a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) and (g) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version.

judgment of conviction for operating a motor vehicle while under the influence of an intoxicant, first offense (the "OWI" offense), and a judgment of conviction for possession of an open intoxicant in his motor vehicle (the "open intoxicant" offense). O'Haire argues that the results of a preliminary breath screening test ("PBT") and his subsequent refusal to submit to an evidentiary breath test under implied consent laws should have been suppressed because the arresting officer coerced his consent to the PBT, invalidating his consent for Fourth Amendment purposes. For the reasons explained below, I disagree and affirm the judgments.

## BACKGROUND

¶2    Sergeant James Sawyer stopped O'Haire's vehicle on the evening of July 20, 2019, and O'Haire was cited with the three counts listed above based on the events that followed. The facts pertinent to this appeal come from Sawyer's testimony at a suppression hearing, which the circuit court credited and O'Haire does not meaningfully dispute.

¶3    Sawyer testified that on the night in question, he stopped O'Haire's vehicle after observing it drift toward the center line, swerve, weave within its lane, and use the left turn signal to signal a right turn. Upon making contact with O'Haire, Sawyer detected a strong aroma of alcohol in the vehicle and that O'Haire's eyes appeared "glossy." O'Haire admitted that he had been driving "like an asshole" and stated he was unfamiliar with the area.

¶4    Sawyer ran O'Haire's information and then asked him to step out of the vehicle. Sawyer continued to detect the odor of alcohol even after O'Haire exited the vehicle. O'Haire eventually admitted that he had been drinking that day but denied that he had consumed any alcohol within the last two hours. Sawyer asked O'Haire to submit to a series of field sobriety tests, and O'Haire exhibited

2

indications of intoxication on each test. According to Sawyer, "everything I saw that night indicated to me that [O'Haire] was impaired."

¶5        Sawyer then advised O'Haire that he intended to administer a PBT,[2] and the conversation that followed is the focus of O'Haire's motion to suppress and arguments on appeal.[3] O'Haire asked if he had to submit to the PBT, to which Sawyer responded: "[Y]ou don't have to do this, but I am telling you right now that if you're going to be below the legal limit, this is going to be in your best interest because if you don't blow into this, you're going to jail, so you can make the decision." O'Haire asked whether his passenger could provide the PBT sample, and Sawyer responded that the passenger's blood alcohol concentration was not relevant to the investigation. Sawyer then said: "Either you blow into it, and if it is below the legal limit, we will figure out what we are going to do or you just don't blow into it and go right to jail. It doesn't matter to me."

¶6        Sawyer then offered the PBT device to O'Haire, who stared at it blankly. Sawyer put the PBT device down, told O'Haire that he was under arrest, and asked him to place his hands behind his back. At that point, O'Haire agreed to

---

[2] WISCONSIN STAT. § 343.303 allows an officer to "request [a] person to provide a sample of his or her breath for a preliminary breath screening test" if the officer has probable cause to believe that a person is violating or has violated various OWI-related statutes. During the circuit court proceedings, O'Haire argued that Sawyer's actions violated this statute because it did not constitute a "request." On appeal, O'Haire does not raise this statutory argument until his reply brief, and I address it no further. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491-92, 588 N.W.2d 285 (Ct. App. 1998) (arguments advanced in the circuit court but not the court of appeals are deemed abandoned, and I generally do not address arguments raised for the first time in a reply brief).

[3] There are minor variations between the conversation as recorded on his body camera and Sawyer's testimony paraphrasing that conversation during the suppression hearing. O'Haire does not argue that any differences are material, and I take the quotations above directly from the transcript of defense counsel's cross-examination of Sawyer at the suppression hearing.

submit to the PBT. The result was .172, well in excess of the legal limit. *See* WIS. STAT. § 340.01(46m)(a).

¶7 Sawyer arrested O'Haire and transported him to jail. After they arrived, Sawyer asked O'Haire to consent to an evidentiary breath test for purposes of chemical analysis pursuant to Wisconsin's implied consent law, WIS. STAT. § 343.305.[4] O'Haire refused to provide the sample, and, as a result, he was also cited under § 343.305(9)(a) with unlawful refusal.

¶8 O'Haire timely requested a refusal hearing under WIS. STAT. § 343.305(10)(a). He then moved to suppress the PBT result so that it could not be used against him at the refusal hearing. He argued that his consent was involuntary and that it had been coerced by Sawyer's "threat" to take him to jail if he did not submit. He also argued that his subsequent refusal to submit to an evidentiary breath test was the fruit of the unlawful administration of the PBT, and that it should be suppressed as well. As I understand it, O'Haire sought an order preventing the State from admitting evidence of his refusal during the refusal hearing, and further preventing the State from admitting such evidence to prove O'Haire's consciousness of guilt in the OWI trial.

¶9 The circuit court denied O'Haire's motion, determining that his consent to the PBT was voluntary. As a result of this determination, the court did not reach O'Haire's argument that evidence of his refusal should be suppressed as fruit of an unlawfully administered PBT. However, the court briefly mentioned

---

[4] In contrast to a PBT administered under WIS. STAT. § 343.303, a test of blood, breath, or urine requested under WIS. STAT. § 343.305 is admissible in court under most circumstances. To distinguish this type of test from a PBT, I refer to the test Sawyer requested pursuant to § 343.305 as an "evidentiary test" or an "evidentiary breath test."

that it saw no "causal nexus" between the administration of the PBT and O'Haire's subsequent refusal to provide a breath sample for chemical testing.

¶10 The circuit court held a hearing on the refusal and a bench trial on the OWI and open intoxicant offenses back-to-back on the same day. The PBT result was admitted into evidence for purposes of the refusal hearing,[5] and O'Haire's refusal to submit to chemical testing of his breath was admitted into evidence for purposes of both proceedings. Sawyer testified at the refusal hearing and at the OWI trial. His testimony during both proceedings was consistent with the testimony he provided at the suppression hearing.

¶11 The court found O'Haire guilty of the refusal at the close of the refusal hearing, and guilty of the OWI and open intoxicant offenses at the close of the bench trial. O'Haire appeals..[6]

## DISCUSSION

¶12 The Fourth Amendment guarantees that the "right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated ...." U.S. CONST. AMEND. IV; *see also* WIS. CONST. art. I, § 11. A breath test is considered a search for Fourth Amendment purposes. *Skinner v. Railway*

---

[5] WISCONSIN STAT. § 343.303 limits the admissibility of PBT results into evidence, allowing admission only to show probable cause for an arrest or to prove that an evidentiary test was properly required or requested under WIS. STAT. § 343.305(3). In this case, the PBT results were admitted during the refusal hearing for the purposes specified in § 343.303.

[6] O'Haire's conviction of the open intoxicant offense was based on an open container that Sawyer found when he searched O'Haire's vehicle following the arrest. Although O'Haire purports to appeal this judgment, his appellate briefing does not provide any legal basis for reversing it. Therefore, I do not further address the judgment of conviction related to the open intoxicant.

*Labor Execs.' Assoc*., 489 U.S. 602, 616-17 (1989); *County of Milwaukee v. Proegler*, 95 Wis. 2d 614, 624, 291 N.W.2d 608 (Ct. App. 1980).

¶13　A warrantless search is unreasonable and therefore unconstitutional unless it falls within one of the "'specifically established and well-delineated' exceptions to the Fourth Amendment's warrant requirement." *State v. Williams*, 2002 WI 94, ¶18, 255 Wis. 2d 1, 646 N.W.2d 834 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Voluntary consent is one of these "established and well-delineated exceptions." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). When a defendant challenges evidence gathered pursuant to the consent exception, the State bears the burden to prove that the consent was voluntary by clear and convincing evidence. *State v. Phillips*, 218 Wis. 2d 180, 197, 577 N.W.2d 794 (1998).

¶14　Under some circumstances, the exclusionary rule requires the suppression of evidence obtained in an unconstitutional search. *State v. Carroll*, 2010 WI 8, ¶19, 322 Wis. 2d 299, 778 N.W.2d 1. The exclusionary rule "applies not only to primary evidence seized during an unlawful search, but also to derivative evidence acquired as a result of the illegal search, unless the State shows sufficient attenuation from the original illegality to dissipate that taint." *Id.* This doctrine about derivative evidence is often referred to as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

¶15　When reviewing the denial of a suppression motion, I uphold the circuit court's findings of fact unless they are clearly erroneous. *State v. Casarez*, 2008 WI App 166, ¶9, 314 Wis. 2d 661, 762 N.W.2d 385. The application of constitutional principles to the facts is a question of law that I review de novo. *Id*.

¶16    O'Haire raises two arguments on appeal.  First, he argues that his consent to the PBT was involuntary, and therefore, the circuit court erred when it admitted the PBT result during the revocation hearing.  Second, he argues that his refusal to submit to an evidentiary breath test should have been suppressed as fruit of the poisonous tree during the revocation hearing and bench trial alike.  I address these arguments in turn.

**I**

¶17    O'Haire acknowledges that he verbally consented to the PBT, but he argues that Sawyer coerced his consent, rendering it involuntary.

¶18    Consent is voluntary if it was the product of "'an essentially free and unconstrained choice'" given "in the absence of 'duress or coercion, either express or implied.'"  ***State v. Blackman***, 2017 WI 77, ¶56-57, 377 Wis. 2d 339, 898 N.W.2d 774 (quoted source omitted); ***Phillips***, 218 Wis. 2d at 197.   When evaluating the totality of the circumstances, courts consider a variety of nonexclusive factors, including, among others, the presence or absence of coercive police tactics such as deception, threats, or intimidation; whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; and whether the police advised the defendant or the defendant otherwise knew of the right to refuse to consent to the search.  *See, e.g.*, ***State v. Artic***, 2010 WI 83, ¶33, 327 Wis. 2d 392, 768 N.W.2d 430; ***Phillips***, 218 Wis. 2d at 198-204.

¶19    O'Haire acknowledges that Sawyer told him that he did not have to consent to the search, and he does not argue that Sawyer's demeanor was in any way non-congenial.   However, O'Haire points to Sawyer's statements that he would take O'Haire to jail if he did not take the PBT and to Sawyer's direction to

7

"turn around and place his hands behind his back" when O'Haire hesitated. O'Haire characterizes these statements as a "threat," and he argues that the statements rose to a level of "intimidation" that renders his consent involuntary.

¶20     O'Haire relies on ***Bumper v. North Carolina***, 391 U.S. 543, 548-49 (1968), but that case is inapt.  In ***Bumper***, the officer told the defendant's grandmother that he had a warrant to search the house, and the grandmother acquiesced to the officers' request to search.  ***Id.*** at 546.  When Bumper sought to suppress the evidence discovered during the search, the prosecutor affirmatively stated that he did not intend to rely on the warrant as legal justification for the search.  ***Id.***  He instead relied exclusively on the grandmother's consent.  ***Id.***  The Supreme Court rejected this argument, explaining:

> A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid.  The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.

***Id.*** at 549.

¶21     Here, by contrast, O'Haire does not argue on appeal that Sawyer lacked lawful authority to arrest him for OWI long before he consented to a PBT. Indeed, as discussed in greater detail below, the facts known to Sawyer overwhelmingly supported a determination that there was probable cause to arrest O'Haire.  O'Haire does not address case law holding that an officer's expressed intention to take an action that the officer is legally entitled to take does not "vitiate consent" if the expressed intention is "genuine" and "not merely a pretext to induce submission." ***Artic***, 327 Wis. 2d 392, ¶41 (addressing this concept in the context of an officer's "[t]hreat[] to obtain a search warrant") (quoted source omitted); *see also* 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 8.2(a), (c) (6th

ed. 2020) (explaining that false or overstated claims of police authority constitute coercion, but lawful claims generally do not).

¶22    Like the circuit court, I conclude that Sawyer accurately informed O'Haire of his precise legal situation and the consequences of refusal—that O'Haire had a right to refuse the PBT, and if he did, Sawyer would immediately take him to jail.  Given that Sawyer had the lawful authority to arrest O'Haire and every intention to do so, Sawyer's so-called "threat" does not amount to coercion. Therefore, in the absence of any other indicia of coercion, I conclude that, under the totality of the circumstances, O'Haire's consent was voluntary, and that the circuit court did not err when it admitted the PBT result during the refusal hearing for the purposes specified in WIS. STAT. § 343.303.

## II

¶23    My determination that O'Haire's consent was voluntary is dispositive to the outcome of this appeal.  Therefore, I need not address O'Haire's remaining arguments, including his argument that the circuit court erred by not suppressing evidence of his subsequent refusal to provide a sample for chemical testing as "fruit of the poisonous tree." *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").  Nevertheless, for the sake of completeness, I now briefly explain why I would still affirm, even if I had concluded that his consent was involuntary and that the PBT result should have been suppressed.

¶24    First, any erroneous failure to suppress the results of the PBT during the refusal hearing was entirely harmless.  An error will generally be considered harmless if there is "no reasonable possibility" that it contributed to the verdict.

9

*See State v. Tulley*, 2001 WI App 236, ¶7, 248 Wis. 2d 505, 635 N.W.2d 807. Here, although Sawyer testified about the PBT result during the refusal hearing, the sole purpose of this testimony was to show that he had probable cause to arrest O'Haire and to require him to submit to an evidentiary breath test. *See* WIS. STAT. § 343.303. As the circuit court explained, the facts overwhelmingly demonstrated that Sawyer had probable cause to arrest O'Haire, including, among others, his erratic driving, the aroma of alcohol inside and outside the vehicle, O'Haire's performance on the roadside sobriety tests, and the fact that O'Haire admitted to drinking alcohol that day. The court did not mention the PBT result even once when it explained its reasons for determining that there was probable cause for the arrest. Under the circumstances, there is no reasonable possibility that the court would have acquitted O'Haire of the refusal had it suppressed the PBT result.

¶25 Second, for the same reason, O'Haire's argument that his refusal to submit to chemical testing was the "fruit" of his "unlawful consent" to the PBT also falls short. Specifically, O'Haire provides no persuasive basis for concluding that Sawyer's decision to require O'Haire to submit to an evidentiary test and O'Haire's subsequent refusal are derivative of the PBT result. Again, there was overwhelming factual support for Sawyer's determination that he had probable cause to believe that O'Haire was impaired by alcohol. Under the circumstances, O'Haire provides no basis to conclude that Sawyer would not have asked O'Haire to submit to an evidentiary test if O'Haire had refused to consent to a PBT.

¶26 In an effort to forge a connection between the PBT and O'Haire's subsequent refusal to submit to chemical testing, O'Haire asserts that PBT results play "a significant role in which type of [evidentiary] test an officer will request." Specifically, he asserts that "a law enforcement officer makes a decision whether to request an evidentiary breath or blood test as a direct function of what is

10

revealed by the PBT"—if the PBT reveals the presence of alcohol, the officer is likely to request a breath test, and if not, the officer might suspect that the driver is impaired by controlled substances and request a blood test. This argument misses the mark and is entirely beside the point. It is undisputed that, with or without the PBT result, Sawyer had probable cause to request that O'Haire submit to a blood, breath, or urine test, WIS. STAT. § 343.305, and that under the circumstances, there is a civil penalty for refusing such tests, § 343.305(9)(a). O'Haire refused to take the evidentiary breath test that was offered, and he provides no reason to believe that he would have consented to a blood or urine test if Sawyer had offered those tests instead. Accordingly, I conclude that O'Haire's subsequent refusal to submit to evidentiary testing is not derivative of the PBT test.[7]

¶27 For all these reasons, I conclude that the circuit court did not err when it denied O'Haire's motion to suppress the PBT result and his subsequent refusal to submit to an evidentiary test.

> *By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] During the suppression hearing, O'Haire's counsel stated that he expected the State to rely on the inevitable discovery doctrine as a basis for denying his motion to suppress evidence of the refusal. However, neither party advances any argument based on that doctrine in the circuit court or on appeal, and therefore I do not further address it.