**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 21, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2019AP590-CR**

Cir. Ct. No. 2016CF515

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JASON ALLEN DONAHUE,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Marathon County: MICHAEL K. MORAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jason Donahue appeals from a judgment, entered upon his no-contest plea, convicting him of first-degree sexual assault of a child

under the age of thirteen. Donahue argues the circuit court erred by denying his motion to suppress incriminating statements he made to police during a custodial interrogation for two reasons: (1) he did not knowingly, intelligently and voluntarily waive his *Miranda*[1] rights prior to giving his statements; and (2) even assuming he validly waived his *Miranda* rights, his statements were involuntary. We reject his arguments and affirm.

## BACKGROUND

¶2    In June 2016, the City of Wausau Police Department received a report that Donahue had sexually assaulted a five-year-old boy. The victim reported that Donahue put his "wiener" in the victim's mouth and "orange pee pee" came out. The assault was alleged to have occurred the previous winter, in a home where Donahue previously lived with the boy and the boy's family.[2]

¶3    On June 15, 2016, police arrested Donahue at his place of employment. They then transported him to the police station, where detectives Jennifer Holz and Nathan Pauls conducted a custodial interrogation.[3]

¶4    At the outset of the interrogation, Holz explained to Donahue that he "obviously" was "not free to leave." Donahue acknowledged that he understood,

---

[1]    *See **Miranda v. Arizona**,* 384 U.S. 436 (1966).

[2]    Specifically, Donahue, who is a registered sex offender, lived with the boy, the boy's father, and the boy's father's girlfriend—who is Donahue's sister—from June 2015 to February 2016. Donahue's sister was the victim in his prior sexual offenses, one of which occurred between 1999 and 2000 (when Donahue was fourteen years old) and one of which occurred in 2004.

[3]    The entirety of this interrogation was video recorded. The circuit court viewed the recording, which appears in the appellate record, before deciding Donahue's suppression motion. We have also viewed the recording.

and Holz then read him the *Miranda* warnings. After doing so, Holz asked Donahue if he understood his rights, and Donahue responded, "Yes, I do." After Holz said, "What's that?" Donahue again replied, "Yes."

¶5    Holz next asked Donahue if he would be willing to answer questions. He initially responded, "No." Holz then said, "What's that, no?" and Donahue immediately changed his response to "yes." Donahue then signed a *Miranda* waiver form.

¶6    Holz began her questioning by informing Donahue she knew he was on "the registry." She told him that she knew he had "always been very honest and forthcoming," and that she hoped that would be "the case here." She then asked Donahue to tell her what happened to the victim.

¶7    Donahue responded by telling the detectives he did not know what had happened to the victim and he denied assaulting him. For approximately ten minutes, Holz and Donahue then discussed various topics, including: Donahue's own childhood trauma (that is, sexual abuse of Donahue by his father); Donahue's participation in therapy after sexually assaulting his sister; and the feelings of guilt that Holz told Donahue his sister felt for allowing Donahue to be alone with the victim. Throughout this discussion, Donahue continued to deny assaulting the victim and gave narrative responses to the questions asked of him.

¶8    Donahue then asked the detectives if they would prefer he "fake that I did it … when in reality I never did it." Holz replied that they just "want[ed] the truth so that [the victim] can heal. That's all. We certainly are not asking you to … to lie." Donahue then shifted from outright denying that he assaulted the victim to stating he could not remember whether he did so. For approximately fifteen minutes, he continued to maintain he could not remember anything

happening, although he stated he had a "feeling that it, it probably happened." Holz eventually inquired whether Donahue had been diagnosed with a "memory disorder," and Donahue responded that he had not.

¶9 Donahue also suggested to the detectives that he would like to continue counseling. At this, Holz informed Donahue that he would have to get counseling at jail and that it would be "better" for him to admit to what happened so that he could "go in front of a judge and say yes I need help." Pauls subsequently asked Donahue what he thought would "look better" to a prosecutor: admitting what happened or claiming that he did not remember.

¶10 Donahue then asked he be given a few minutes to try and remember what happened. After sitting quietly for just over three minutes, Donahue stated he remembered "putting the tip of my penis in his mouth." In the face of numerous follow-up questions concerning whether Donahue also ejaculated or urinated in the boy's mouth, Donahue continued to deny that any such conduct occurred. He also continued to deny committing any other sexual assaults throughout the remainder of the interrogation, which concluded just over one hour after it began.

¶11 The State subsequently charged Donahue with first-degree sexual assault of a child under the age of twelve, contrary to WIS. STAT. § 948.02(1)(b) (2017-18).[4] Donahue moved to suppress the statements he made during the interrogation, arguing he did not validly waive his *Miranda* rights and his statements were involuntary.

---

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶12   Donahue did not testify at the suppression hearing. He did, however, call Dr. Steven Benson, a forensic psychologist who had performed a forensic evaluation on Donahue. Based on his evaluation,[5] Benson testified he diagnosed Donahue with "schizoaffective disorder" and "mild intellectual disability." Regarding the latter diagnosis, Benson testified that Donahue had an intelligent quotient (IQ) score of 80. Given Donahue's cognitive capacity, Benson stated Donahue would have "major issues with seeing how things fit together" and, therefore, may have lacked a full understanding of the implication of his *Miranda* waiver. Further, Benson testified that Donahue was "submissive and for virtually his entire life he has been taught to submit to authority whether just or not."

¶13   The circuit court denied Donahue's motion in an oral decision. The court determined that "considering the totality of the circumstances … [Donahue] understood his constitutional rights and made a knowing, intelligent, voluntary waiver of those rights which satisfies the *Miranda* requirements for the rights being given."

¶14   Regarding the voluntariness of Donahue's statements, the circuit court concluded that the record contained no evidence of coercive police activity. The court based this conclusion on the following findings:

> The detectives did not brandish their firearms at any time during their interview. They did not touch the defendant or

---

[5] Benson prepared a report based on his evaluation of Donahue, which was submitted into evidence. As relevant to this appeal, that report indicated that Donahue had been enrolled in special education courses beginning in middle school, and until he graduated from high school in 2004. The report characterized Donahue's work history as "sporadic," although it noted that he had worked continuously during the eighteen months prior to his arrest at "Great Lakes Cheese as a transporter."

use physical force with him. They did not threaten him, did not yell or scream at him, and the interview lasted a little over an hour, I think, a minute and—or an hour and one minute. Handcuffs were removed and they indicated they used interrogation techniques according to their training and the evidence.

¶15 The circuit court then noted that it need not weigh the conduct of detectives Pauls and Holz against the personal characteristics of Donahue, because "coercive police activity is necessary to predicate [a] finding that a confession is not voluntary." Nonetheless, the court decided to "address [Donahue's] personal characteristics, because really the heart of what the defense is arguing here is that [Donahue's] personal characteristics are part and parcel of why this [interrogation] is coercive activity." The court then noted:

> At the time of the interview the defendant was 30 years old, graduated from high school, had a job, volunteered for additional responsibilities at his place of employment. He advanced to different positions in his occupation, had expressed a desire to learn development skills, lived with a roommate, paid his rent on time, had interacted with law enforcement before [the interrogation], which is important when we look at characteristics, and during his interview he occasionally asked questions of the detectives. He asked clarifying questions if he did not understand something, and at one point stated he understood what Detective Pauls was saying. He further indicated that he had counseling before and wished to continue counseling in the future.
>
>  ….
>
> I cannot, based upon [Dr. Benson's] testimony, deny that the defendant has some impairment based upon the testing. But I cannot find from the record and my viewing of the video that the impairment created a situation that renders this statement involuntary.

The court further observed that Donahue's continued denials of either ejaculating or urinating into the victim's mouth demonstrated that Donahue was not "merely

just mimick[ing] back or parrot[ing] back exactly what the detectives were asking."

¶16    Donahue moved for reconsideration, and the circuit court affirmed its prior decision. Donahue subsequently pled no contest to an amended charge of first-degree sexual assault of a child under the age of thirteen, contrary to WIS. STAT. § 948.02(1)(e). Donahue now appeals, challenging the denial of his suppression motion. *See* WIS. STAT. § 971.31(10). Additional facts are included below.

## STANDARD OF REVIEW

¶17    Our review of a circuit court's denial of a motion to suppress presents a mixed question of fact and law. *State v. Casarez*, 2008 WI App 166, ¶9, 314 Wis. 2d 661, 762 N.W.2d 385. We uphold the circuit court's findings of historical fact unless they are clearly erroneous, but the application of the law to those facts is a question of law that we review independently. *Id.*

## DISCUSSION

### I. Waiver

¶18    Donahue first argues the circuit court erred by concluding that he validly waived his *Miranda* rights. When the State seeks to admit into evidence an accused's custodial statement, both the United States and Wisconsin constitutional protections against compelled self-incrimination require the State to show that the accused was adequately informed of his or her *Miranda* rights and validly waived those rights. *State v. Santiago*, 206 Wis. 2d 3, 18, 556 N.W.2d 687 (1996). In order to be valid, a *Miranda* waiver must be knowing, voluntary and intelligent. *State v. Ward*, 2009 WI 60, ¶30, 318 Wis. 2d 301, 767 N.W.2d

236. A waiver is knowing, voluntary and intelligent where it is the product of a free and deliberate choice and has been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.*

¶19 The State establishes a prima facie showing of a valid *Miranda* waiver by demonstrating law enforcement informed a defendant of all the rights and admonitions required by *Miranda*, and the defendant indicated that he or she understood those rights and was willing to make a statement. *See State v. Lee*, 175 Wis. 2d 348, 360, 499 N.W.2d 250 (Ct. App. 1993). Once this prima facie case has been established, a court may conclude a defendant's waiver was nevertheless invalid only if the defendant presents "countervailing evidence" to show that he or she did not, in fact, knowingly, intelligently, and voluntarily waive his or her *Miranda* rights. *See id.* at 360-61. "It is only when the evidence in the case shows that the defendant could not comprehend even the most basic concepts underlying the *Miranda* warnings that the courts have found an unintelligent waiver." *Collins v. Gaetz*, 612 F.3d 574, 588 (7th Cir. 2010).

¶20 We conclude the State made a prima facie showing that Donahue validly waived his *Miranda* rights and that Donahue failed to present countervailing evidence to rebut that showing. Concerning the State's prima facie showing of a valid waiver, the circuit court found that after Holz read Donahue his *Miranda* warnings, Donahue twice indicated he understood his rights, and Donahue then agreed to make a statement.

¶21 Donahue does not argue the circuit court's factual findings in this regard were clearly erroneous. Instead, he argues that although the court's findings "may satisfy the prima facie proof requirements for many suspects, …

8

this proof is insufficient when dealing with suspects who have cognitive and mental limitations." In support of this contention, Donahue relies primarily on *Schultz v. State*, 82 Wis. 2d 737, 264 N.W.2d 245 (1978).[6]

¶22 Donahue's reliance on *Schultz* is unavailing. In that case, our supreme court explicitly stated the defendant's "outward appearance" at the time he waived his *Miranda* warnings was what determined whether the State had made a prima facie showing of a valid *Miranda* waiver. *See id.* at 748. Thus, because the defendant in that case "appeared to be coherent, alert and intelligent," when law enforcement read him his *Miranda* rights, the court concluded the State established a prima facie case of a valid *Miranda* waiver. *Id.*

¶23 Here, the circuit court found in its original decision denying Donahue's suppression motion that there was "no evidence that the detectives had an inkling" that Donahue suffered from cognitive limitations at any point during the interrogation. The court reiterated this finding when it denied Donahue's motion for reconsideration, stating, "I don't see [any cognitive] limitations manifesting themselves in the video." Consequently, we conclude *Schultz* supports, rather than undermines, the court's determination that the State established a prima facie showing that Donahue validly waived his *Miranda* rights.

---

[6] The only other case Donahue cites in support of his argument that the personal characteristics of a defendant may affect the level of proof necessary for the State to make a prima facie showing of a valid *Miranda* waiver is *State v. Moore*, 2015 WI 54, 363 Wis. 2d 376, 864 N.W.2d 827. Donahue's reliance on *Moore* is inapposite; the *Moore* court did not consider the validity of the defendant's *Miranda* waiver. *See generally*, *id.* Instead, the *Moore* court considered whether the defendant understood his *Miranda* rights in the context of determining whether the statements made by the defendant during his custodial interrogation were voluntary. *Id.*, ¶65. We discuss *Moore* in that light later in this opinion.

¶24    Donahue next asserts that, "even if the State did make a prima facie showing of a valid *Miranda* waiver," he "presented an overwhelming body of countervailing evidence through Dr. Benson" that established his waiver was, in fact, invalid. In support of his assertion, Donahue merely summarizes the testimony Benson gave at the suppression hearing regarding Donahue's limited cognitive capacity. Donahue argues that testimony shows he lacked a "full awareness" of his rights and the consequences of waiving them.

¶25    We are not persuaded. By focusing solely on Benson's testimony regarding his cognitive capacity, Donahue implicitly invites us to adopt a categorical rule that individuals with certain intellectual limitations are unable, as a matter of law, to validly waive their *Miranda* rights. But Donahue cites no legal authority supporting such a rigid rule, and he ignores binding precedent directing us to consider the totality of the circumstances when determining the validity of a *Miranda* waiver. *See State v. Hambly*, 2008 WI 10, ¶91, 307 Wis. 2d 98, 745 N.W.2d 48. That standard applies even when a defendant "casts [her- or] himself as limited in intelligence and sophistication." *Id.*

¶26    In this case, the totality of the circumstances demonstrates that Donahue's *Miranda* waiver was valid. The circuit court found that Donahue's "response to the explanation of why [Holz] had to read him his rights … illustrates his understanding of what's happening" and, therefore, that Donahue "understood each right and was willing to waive them and answer questions." A defendant's coherent responses to law enforcement's explanation of his or her *Miranda* rights supports a conclusion that his or her waiver of those rights was valid. *State v. Beaver*, 181 Wis. 2d 959, 967, 512 N.W.2d 254 (Ct. App. 1994).

¶27 Further, the circuit court also found that Donahue had been "questioned by law enforcement" prior to his June 15, 2016 interrogation, and therefore had a "basis for understanding the process." A defendant's prior experience with law enforcement—and familiarity with *Miranda* warnings—is a proper factor for a court to consider when determining whether a valid *Miranda* waiver occurred. *See State v. Hampton*, 2010 WI App 169, ¶33, 330 Wis. 2d 531, 793 N.W.2d 901.

¶28 Donahue contends that the State presented no "explicit evidence that Mr. Donahue made any sort of a *Miranda* waiver as part [of his] prior police contact." Thus, he appears to argue that the circuit court's finding that he had a "basis for understanding the process" was clearly erroneous. In so arguing, Donahue ignores our standard of review. To explain, by faulting the State for not introducing "explicit evidence" of whether he was advised of his *Miranda* rights during his prior contacts with police, he fails to recognize that a circuit court's factual findings are not clearly erroneous if the findings are supported by any credible evidence in the record, or any reasonable inferences from that evidence. *See Insurance Co. of N. Am. v. DEC Int'l, Inc.*, 220 Wis. 2d 840, 845, 586 N.W.2d 691 (Ct. App. 1998). We conclude the court could reasonably infer that Donahue's prior questioning by law enforcement involved him being advised of his *Miranda* rights.

## II. Voluntariness of statements

¶29 Donahue next argues that even if he validly waived his *Miranda* rights, the statements he made during his interrogation were involuntary. When a defendant challenges the voluntariness of the statements he or she made to law enforcement, the State bears the burden of showing by a preponderance of the

evidence that the statements were voluntary. *See **State v. Moore***, 2015 WI 54, ¶55, 363 Wis. 2d 376, 864 N.W.2d 827. We evaluate voluntariness in light of all the circumstances surrounding the interrogation and balance the defendant's personal characteristics against the actions of law enforcement. *See **id.***, ¶56. Because a defendant's personal characteristics alone cannot form the basis for finding that his or her statements were made involuntarily, however, we "cannot properly label a statement involuntary unless there is 'some affirmative evidence of improper police practices deliberately used to procure a confession.'" ***State v. Dobbs***, 2020 WI 64, ¶72, __ Wis. 2d __, __ N.W.2d __ (citing ***Moore***, 363 Wis. 2d 376, ¶56).

¶30    We conclude that Donahue's failure to establish that detectives Holz and Pauls engaged in any improper practices is fatal to his claim that his statements were involuntary. *See **Dobbs***, __ Wis. 2d __, ¶73. Donahue makes much of the fact that the detectives "both testified to a litany of tactics and tools they used during the interrogation." Namely, he points to the fact that the detectives: (1) positioned themselves with "no barrier" between themselves and Donahue; (2) repeatedly demanded he tell them the truth; (3) referenced Donahue's prior record; (4) "create[d] empathy for the alleged child victim"; (5) told Donahue the alleged child victim needed help; (6) informed Donahue they had experience investigating child sexual assaults; (7) "deflect[ed] blame"; (8) offered explanations for "how the offense might be an accident"; (9) "introduce[d] facts provided by the victim"; (10) "appeal[ed] to [Donahue's] morality"; and (11) "encourage[d] a confession so [Donahue could] move on, and on and on."

¶31    Even accepting Donahue's premise that the detectives engaged in all of the conduct he describes during his interrogation, we reject Donahue's assertion

that this conduct is evidence of improper police practices. We do so for two reasons. First, Donahue fails to cite any controlling law holding these tactics—at least to the extent they are employed either individually or collectively in an interrogation of an "average" defendant—are improper. Moreover, our case law supports the contrary conclusion. *See Moore*, 363 Wis. 2d 376, ¶64 (noting that although "tactics such as minimizing, suggesting that [the victim's] death may have been an accident, and telling [the defendant] that other witnesses were saying he shot [the victim]" may have influenced the defendant, "they are tactics that courts commonly accept").

¶32　Second, Donahue suggests that even if the tactics detectives Holz and Pauls used would not be improper when employed against an "average" defendant, they were improper when used during his interrogation due to his cognitive limitations. In support, he analogizes the detectives' conduct to that used by police in *State v. Hoppe*, 2003 WI 43, 261 Wis. 2d 294, 661 N.W.2d 407. We are not persuaded.

¶33　In *Hoppe*, our supreme court held that a defendant's "open and obvious" impairments[7] rendered otherwise permissible interrogation techniques coercive. *See id.*, ¶¶51, 59. Here, in contrast, the circuit court found that Donahue did not display any impairment during his interrogation. That finding is not clearly erroneous.

---

[7] These impairments, which were caused by the defendant's chronic alcoholism, included hallucinations, slurred speech, short-term memory problems, and an inability to stay awake. *See State v. Hoppe*, 2003 WI 43, ¶48, 261 Wis. 2d 294, 661 N.W.2d 407.

¶34   Because Donahue did not display any impairment during his interrogation, we conclude that our supreme court's decision in *Moore*, rather than *Hoppe*, controls.  In *Moore*, after reading a fifteen-year-old suspect[8] his *Miranda* rights, police interrogated him for approximately five and one-half hours, over an eleven-hour period, until he gave a confession.  *Moore*, 363 Wis. 2d 376, ¶62. Like Donahue, that juvenile suspect had a "below-average intellect."[9]  *Id.*, ¶61.

¶35   Against that backdrop, the *Moore* court did not view the use of interrogation techniques courts "commonly accept" as improper.  *Id.*, ¶64.  Given that determination, we cannot conclude that the detectives here, by conducting a much shorter interrogation of an adult suspect with an IQ similar to the suspect in *Moore*—and without employing any impermissible interrogation techniques— engaged in improper conduct.  Therefore, based upon the lack of proof of any improper police practices, we conclude Donahue's statements were voluntary.[10] *See* *Dobbs*, __ Wis. 2d __, ¶74.

---

[8]  We note that courts "more carefully … scrutinize" police conduct during interrogations of juveniles (like the defendant in *Moore*) than during interrogations of adults (like Donahue).  *See Moore*, 363 Wis. 2d 376, ¶57.

[9]  One evaluation of the defendant in *Moore* placed his IQ score between 71 and 84, and another placed his IQ score between 69 and 79.  *See Moore*, 363 Wis. 2d 376, ¶124 n.9 (Abrahamson, C.J., dissenting).

[10]  The State raises an argument that even if the circuit court erred by failing to suppress Donahue's confession, Donahue is still not entitled to plea withdrawal because he cannot show that the court's decision caused him to enter his plea.  We need not, and do not, address this argument.  *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* W<small>IS</small>. S<small>TAT</small>. R<small>ULE</small> 809.23(1)(b)5.